IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIFFANY BARBER, Administratrix** of the **ESTATE OF LAMONT L. BONNER,** deceased, <br><br>**Plaintiff,**<br><br>VS.<br><br>**CORIZON HEALTH; CORIZON HEALTH INC.; ORLANDO HARPER, WARDEN OF THE ALLEGHENY COUNTY JAIL, in both his Official and Individual Capacities; the COUNTY OF ALLEGHENY; CORRECTIONAL OFFICER BUTLER, FIRST NAME UNKNOWN, in both his/her Official and Individual Capacities; CORRECTIONAL OFFICER EDWARDS, FIRST NAME UNKNOWN, in both his/her Official and Individual Capacities; CORRECTIONAL OFFICER WHITE, in both his/her Official and Individual Capacities; and THE PROGRAM FOR OFFENDERS, INC., d/b/a the Allegheny County Treatment Alternative,**<br><br>**Defendants.** | Civil Action No. 2:05-mc-2015<br><br>**TYPE OF PLEADING**:<br><br>**COMPLAINT**<br><br>*Section 1983 Civil Rights Action*<br><br><br>**FILED ON BEHALF OF**:<br><br>Tiffany Barber, Administratrix of the Estate of Lamont L. Bonner, deceased.<br><br><br><br>**COUNSEL OF RECORD:**<br><br>Noah Geary, Esquire<br>Suite 600; 304 Ross Street<br>The Mitchell Building<br>Pittsburgh, PA 15219<br>412-232-7000<br><br>PA ID 78382<br><br>October 31, 2015 |

**JURY TRIAL DEMANDED.**

1

## COMPLAINT.

**AND NOW COMES** the Plaintiff, Tiffany Barber, Administratrix of the Estate of Lamont L. Bonner, deceased, through her lawyer, Noah Geary, and in support avers as follows:

## THE PARTIES.

1. Plaintiff Tiffany Barber is the Administratrix of the Estate of Lamont L. Bonner, deceased. Letters of Administration were issued by the Register of Wills of the Allegheny County Court of Common Pleas on February 6, 2015 appointing her as the personal representative of her father's Estate at Docket Number 021500805.

2. Defendant Corizon, Inc. is a Missouri Corporation or other business entity with a principal place of business located at 105 Westpark Drive, Suite 200, Brentwood, Tennessee 37027. At all times material, this Defendant was contracted with the County of Allegheny and the Allegheny County Jail to provide medical services to inmates in the Allegheny County Jail.

3. Defendant Corizon Health, Inc. is a Delaware Corporation or other business entity with a principal place of business located at 105 Westpark Drive, Suite 200, Brentwood, Tennessee 37027. At all times material, this Defendant was contracted with the County of Allegheny and the Allegheny County Jail to provide medical services to inmates in the Allegheny County Jail.

4. Defendant Orlando Harper, in his Official Capacity, was at all times material acting under color of state law in his capacity as Warden of the Allegheny County Jail, which is located in the County of Allegheny within the Western District at 950 Second Avenue in the City of Pittsburgh.

5. Defendant Orlando Harper, individually, is an adult individual who at all times relevant acted as an individual and is a resident of Allegheny County, Pennsylvania, located within the Western District.

6.      Defendant County of Allegheny is a political subdivision of the Commonwealth of Pennsylvania which is located in the Western District of Pennsylvania. At all times material, Allegheny County operated the Allegheny County Jail and was acting under color of state law.

7.      Defendant Butler, first name unknown, in his/her Official Capacity, was at all times material acting under color of state law in his/her capacity as a Correctional Officer at the Allegheny County Jail.

8.      Defendant Butler, first name unknown, individually, is an adult individual who at all times relevant acted as an individual and is a resident of Allegheny County, Pennsylvania, located within the Western District.

9.      Defendant Edwards, first name unknown, in his/her official capacity, was at all times relevant acting under color of state law in his/her capacity as a Correctional Officer at the Allegheny County Jail.

10.     Defendant Edwards, first name unknown, individually, is an adult individual who at all times relevant acted as an individual and is a resident of Allegheny County, Pennsylvania, located within the Western District.

11.     Defendant White, first name unknown, in his/her official capacity, was at all times relevant acting under color of law in his/her capacity as a Correctional Officer at the Allegheny County Jail.

12.     Defendant White, first name unknown, is an adult individual who at all times relevant acted as an individual and was a resident of Allegheny County, Pennsylvania, located within the Western District.

13.     Defendant The Program for Offenders, Inc., d/b/a as ACTA, Allegheny County Treatment Alternative, is a corporation organized and doing business in the Commonwealth of

Pennsylvania with a principal business address of 564 Forbes Avenue Suite, 930 Pittsburgh, PA 15219. At all times material, this Defendant had a contract with the County of Allegheny and the Allegheny County Jail to provide residential alternatives to incarceration. For a period of time, Plaintiff's deceased, Lamont Bonner, was housed in the ACTA male residential facility, and this Defendant had a duty to provide medical care to Lamont Bonner.

### JURISDICTION AND VENUE.

14. This action arises under the Constitution of the United States of America, particularly the Eighth Amendment to the Constitution of the United States of America, and under the laws of the United States of America, particularly the Civil Rights Act of 1964, Title 42 U.S.C.§ 1983.

15. The jurisdiction of this court is invoked under the provisions of 28 U.S.C.A. § 1331. The Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. Section 1367(a) to hear and adjudicate state law claims.

16. Venue is proper in this District pursuant to Title 28 U.S.C. § 1391 because the Defendants' unlawful acts giving rise to the claims occurred in this District.

### Statement of the Claim.

17. The above paragraphs are incorporated herein as though set forth fully.

18. On or about August 6, 2013, the Plaintiff's Father, Lamont L. Bonner, age 52, was lodged in the Allegheny County Jail.

19. Mr. Bonner had a severe eczema condition which covered the majority of his body.

20. Other than the eczema condition, he was in good health.

21. Mr. Bonner, upon being lodged in the Allegheny County Jail, was guaranteed the right under the Eighth Amendment of the United States Constitution to proper medical care.

22.     The staff at the Allegheny County Jail, including the employees of Allegheny County as well as the employees of Corizon Inc. and Corizon Health, Inc. had a duty to provide for the medical care of Mr. Bonner and to refrain from engaging in deliberate indifference to his serious medical needs.

24.     After initially being housed in the Allegheny County Jail for a period of weeks, in approximately late August or early September, 2013 Bonner was transferred to The Program for Offenders, Inc., and was housed in the Allegheny County Treatment Alternative facility, which was/is owned and operated by Defendant The Program for Offenders, Inc..

25.     While housed in the ACTA facility, Bonner had the right to proper medical care. The Program for Offenders, Inc., like the ACJ and the Corizon Defendants, had a duty to provide medical care to Bonner and to refrain from engaging in deliberate indifference to his serious medical needs.

26.     At all times material, Mr. Bonner was prescribed by a physician cream for his severe eczema condition. It was to be applied daily.

27.     Despite the existence of a physician's prescription and despite knowing that Mr. Bonner needed to apply the cream on a daily basis, the employees of Defendant The Program for Offenders, Inc. failed to provide Mr. Bonner his prescribed cream for an extended period of time.

28.     This failure occurred despite Mr. Bonner repeatedly informing the staff at the ACTA facility that he needed his cream and despite his continually requesting it.

29.     Family members of Mr. Bonner additionally made requests of the ACTA staff to provide Mr. Bonner his prescribed cream.

30.     The staff at ACTA knew that the failure to provide Mr. Bonner with the prescribed cream

put him at risk of the cracking open of his skin; the cracking open of Bonner's skin made him immediately susceptible to infection including but not limited to life-threatening infection.

31. Nevertheless, the employees of ACTA failed to procure and provide Mr. Bonner with the prescribed cream.

32. As was absolutely foreseeable, Mr. Bonner predictably experienced the cracking open of his skin, which led to his contracting a bacterial infection in his bloodstream.

33. This bacterial infection led to signs and symptoms of, among other things, fever, pain, joint pain, headaches and serious illness of which the ACTA employees were made aware by Mr. Bonner and by their personal observations of him.

34. The infection overtook Mr. Bonner and developed into endocarditis, wherein the valves of Mr. Bonner's heart became infected; the infection of the heart valves resulted in him sustaining numerous strokes, which caused brain damage.

35. The employees of Defendant The Program for Offenders, Inc., rather than rush Mr. Bonner to a Hospital Emergency Department, transferred Mr. Bonner back to the Allegheny County Jail, where the medical care provided by the Corizon Defendants was notoriously poor and not prompt, of which the ACTA employees were aware.

36. The transfer of Mr. Bonner back to the Allegheny County Jail from the ACTA facility occurred on or about November 1, 2013.

37. From November 1, 2013 until November 4, 2013, Mr. Bonner was in the care, custody and control of the Allegheny County Jail and the Corizon Defendants.

38. Mr. Bonner continued to exhibit signs and symptoms of among other things, fever, pain, joint pain, headaches and serious illness of which the Corizon employees and Jail Correctional Officers were made aware by Mr. Bonner as well as by their personal observations of him. It is

believed and therefore averred that Mr. Bonner requested medical help including that he be taken to a Hospital.

39. Any person dealing with the onset of a bacterial blood infection and endocarditis would have appeared gravely ill to the Corizon employees and to the Defendant Correctional Officers and would obviously need immediate, serious medical attention.

40. From November 1, 2013, through November 4, 2013, while in the Allegheny County Jail, Mr. Bonner continued to exhibit signs and symptoms of one who was desperately in need of immediate and serious medical attention who should have been rushed to a Hospital Emergency Department.

41. The Corizon employees as well as the Defendant Correctional Officers were aware that Mr. Bonner had a serious medical need, and they ignored his needs.

42. Significantly, the Plaintiff has requested from the Corizon Defendants production of Mr. Bonner's medical records.

43. A representative of Corizon responded that Corizon could not even find Mr. Bonner's records.

44. It is therefore averred that the Corizon Defendants failed to provide any medical treatment whatsoever to Mr. Bonner.

45. Additionally, the Correctional Officer Defendants White, Butler and Edwards knew that Bonner was receiving no medical treatment from the Corizon employees, yet did nothing, knowing that doing nothing would worsen his condition.

46. The Defendant Correctional Officers and Corizon employees waited for 4 days, until November 4, 2013, to take Mr. Bonner to the Mercy Hospital Emergency Department.

47. It was far too late.

48. Although Mr. Bonner lived for 9 days in Mercy Hospital, there was little the Hospital could do for him. He died on November 13, 2013.

49. His cause of death was embolic strokes resulting from the bacteria infection caused by the cracking open of his skin from his severe eczema condition.

50. Had the Defendants simply provided the man with the eczema cream which his severe eczema condition required so that he could apply it to his skin, Mr. Bonner would not have developed the severe cracking open of his skin and the resulting bacterial infection, endocarditis, strokes and death.

51. Lamont Bonner's death was totally preventable and unnecessary.

### COUNT I.
### THE PLAINTIFF VS. ALL DEFENDANTS.
### DELIBERATE INDIFFERENCE TO THE SERIOUS MEDICAL NEEDS OF LAMONT BONNER IN VIOLATION OF THE 8TH AMENDMENT; SECTION 1983 CIVIL RIGHTS VIOLATION.

52. The above paragraphs are incorporated by reference as though set forth fully.

53. As detailed above, Bonner developed a serious medical need due to the Defendants' failure to provide him with his prescribed cream to apply to his eczema.

54. The Defendants were on notice of Mr. Bonner's severe eczema condition from his records/medical records from a prior commitment in the Allegheny County Jail.

55. Despite The Program for Offenders, Inc.'s failure to procure and provide Mr. Bonner with his prescribed medicine, by the time he was transferred back to the ACJ, his life still could have been saved had the Corizon Defendants and the Defendant Correctional Officers not exhibited deliberate indifference and negligence towards Bonner's obvious serious medical needs.

56.     Had any of the Defendants taken Bonner to a Hospital Emergency Department sooner, he would not have died.

57.     The Defendants exhibited deliberate indifference to Bonner's serious medical needs and committed negligence which was the direct and proximate result of his injuries and death, as follows:

    (i)     The Program for Offenders, Inc.:

        a.     by failing to procure and provide Bonner with his prescribed cream, knowing that this would worsen his condition;

        b.     by ignoring the signs and symptoms from their personal observations of Bonner that he was gravely ill and in obvious need of immediate, serious medical attention, knowing that this would worsen his condition;

        c.     by ignoring Bonner's requests for his cream, his family's requests for his cream, and ignoring his requests for medical attention knowing, that this would worsen his condition;

        d.     by failing to transport him to a Hospital Emergency Department rather than transferring him back to the ACJ, knowing that this would worsen his condition;

        e.     by not transferring him back to the ACJ sooner;

        f.     by failing to staff the ACTA facility with on-site medical personnel who could have more readily ascertained the crucial and immediate need to get Bonner his cream, to get him to a Hospital, and to transfer him back to the ACJ sooner;

        g.     by failing to staff the ACTA facility with even an on-call medical employee who could have more readily ascertained the crucial and immediate need to get Bonner the cream and to a Hospital;

        h.     by failing to provide appropriate medical training to staff so that they could better recognize the urgency of procuring cream for Bonner and to get him treatment sooner, including but not limited to getting him to a Hospital and/or back to the ACJ sooner – despite being aware that none of the on-site staff were medical personnel and who had notified management that they could not competently handle medical issues that arose on the premises; and

9

      i.       by any other act/omission identified elsewhere in this Complaint;

all of which caused the violation of Bonner's constitutional right to proper medical care and his resulting death.

    (ii)      Corizon, Inc. and Corizon Health, Inc.,:

          a.      by failing to procure and provide ACTA with Bonner's prescribed cream while he was still housed in the ACTA facility knowing that this would worsen his condition;

          b.      by ignoring the signs and symptoms from their personal observations of Bonner that he was gravely ill and in obvious need of immediate, serious medical attention, knowing that this would worsen his condition;

          c.      by ignoring Bonner's requests for his cream, and ignoring his requests for medical attention, knowing that he was seriously ill and that ignoring him would cause him further harm;

          d.      by failing to transport him to a Hospital Emergency Department sooner, knowing that this would worsen his condition;

          e.      by failing to conduct an appropriate medical screening of Bonner upon his transfer back to the ACJ from ACTA on or about November 1, 2013;

          f.      by failing to provide him with any medical care/attention whatsoever, knowing that this would worsen his condition;

          g.      by failing to document Bonner's signs, symptoms and complaints so that proper medical care could be provided, knowing that this would worsen his condition;

          h.      by ignoring Bonner's requests for help and to be taken to a Hospital, knowing that this would worsen his condition;

          i.      by having a practice and custom of understaffing the Jail;

          j.      by having a custom and practice of not creating and maintaining medical records on inmates including but not limited to Bonner;

          k.      by having a custom and practice of not providing inmates like Bonner with appropriate clinical care;

      l.      by having a custom and practice of not responding to inmate medical grievances and sick call slips in a timely manner;

      m.      by having a custom and practice of not supplying the jail infirmary with medicines/medications that inmates required/needed;

      n.      by having a custom and practice of not complying with pharmacy management requirements;

      o.      by having a custom and practice of failing to have employees work regular assignments, and by giving them assignments which they had insufficient training/experience in;

      i.      by any other act/omission identified elsewhere in this Complaint,

all of which caused the violation of Bonner's constitutional right to proper medical care and his resulting death.

    (iii)    Defendants White, Butler and Edwards in their Official and Individual Capacities:

      a.      by failing to transport Bonner to a Hospital sooner when they knew that he was receiving no/inadequate medical treatment from the Corizon employees, and that failing to do so would worsen Bonner's condition;

      b.      by failing to procure and provide Bonner with his prescribed cream knowing that this would worsen his condition;

      c.      by ignoring the signs and symptoms from their personal observations of Bonner that he was gravely ill and in obvious need of immediate, serious medical attention, knowing that this would worsen his condition;

      d.      by ignoring Bonner's requests for his cream, and ignoring his requests for medical attention, knowing that this would worsen his condition;

      e.      by failing to contact Management of Corizon and/or the Jail to cause Bonner to receive proper medical treatment upon learning that the Corizon employees were doing nothing to address Bonner's serious medical needs;

      f.      by any other act/omission identified elsewhere in this Complaint,

all of which caused the violation of Bonner's constitutional right to proper medical care and his resulting death.

      (iv)    Warden Orlando Harper in his Official and Individual Capacities:

The contract the County entered into with Corizon specifically called for Warden Harper to be personally involved in monitoring Corizon's services. The Warden is liable for Bonner's death under the theory of supervisory liability in that Harper was personally involved in the supervision of the monitoring of Corizon, but yet, while being responsible for monitoring Corizon, Harper permitted Corizon to engage in deliberate indifference to the serious medical needs of inmates like Bonner:

    a.    by having a practice and custom of understaffing the Jail;

    b.    by having a custom and practice of not creating and maintaining medical records on inmates including but not limited to Bonner;

    c.    by having a custom and practice of not providing inmates like Bonner with appropriate clinical care;

    d.    by having a custom and practice of not responding to inmate medical grievances and sick call slips in a timely manner;

    e.    by having a custom and practice of not supplying the jail infirmary with medicines/medications that inmates required/needed;

    f.    by having a custom and practice of not complying with pharmacy management requirements;

    g.    by having a custom and practice of failing to have employees work regular assignments, and by giving them assignments which they had insufficient training/experience in;

    h.    by having a custom and practice of providing atrocious medical care,

all of which was casually connected to the specific violation of Bonner's constitutional right to proper medical care and his resulting death.

.

58. In light of all of the above, the Defendants acted with reckless indifference to Lamont Bonner's federally-protected constitutional right to proper medical care.

59. The Plaintiff therefore seeks punitive damages against all Defendants.

**WHEREFORE**, the Plaintiff demands judgment against these Defendants, jointly, severally, and individually in an amount to be determined by a jury after a trial by jury, compensatory damages, punitive damages, interest, attorney fees and any/all other relief as this Court may deem appropriate, whether legal or equitable.

### COUNT II.   SURVIVAL ACTION.
### THE PLAINTIFF VS. DEFENDANTS CORIZON HEALTH, CORIZON HEALTH INC., and THE PROGRAM FOR OFFENDERS, INC..

60. The foregoing paragraphs are incorporated by reference as though set forth fully.

61. The Plaintiff brings this Survival Action under **Title 20 Pa. Cons. Stat. Ann. § 3373 and 42 Pa. Cons. Stat. Ann § 8302.**

62. These Defendants had a duty to provide medical care to Bonner.

63. These Defendants breached that duty by engaging in the acts/omissions set forth in paragraph 57 above. All of these acts/omissions increased the risk of harm to Bonner as well.

64. These Defendants' breach of their duty to Bonner was the direct and proximate cause of his injuries and unnecessary death.

65. As a direct and proximate result of these Defendants' negligence, Mr. Bonner suffered and all of the Defendants are liable to the Plaintiff for the following damages:

> (a) for Mr. Bonner's pain and suffering resulting from the development of the cracking open of his skin, of all of the symptoms caused by the bacterial blood infection, the endocarditis, the resulting strokes, and all of the accompanying anxiety, fear, panic and mental anguish and emotional distress he suffered and endured until the time of his death in Mercy Hospital;

(b) Mr. Bonners's total estimated future earnings less his estimated cost of personal maintenance;

(c) his lost earnings capacity;

(d) his loss of retirement and Social Security income;

(e) other financial losses suffered as a result of his death;

(f) the loss of the enjoyment of his life;

(g) punitive damages; and

(h) any/all other damages to which the Plaintiff may be entitled, whether legal or equitable.

66. The acts and omissions detailed above exhibit a reckless indifference by these Defendants to Bonner's serious medical needs.

67. Accordingly, punitive damages are demanded.

**WHEREFORE**, the Plaintiff demands judgment against these Defendants, jointly, severally, and individually in an amount to be determined by a jury after a trial by jury, compensatory damages, punitive damages interest, attorney fees and any/all other relief as this Honorable Court may deem appropriate, whether legal or equitable.

## COUNT III.
## WRONGFUL DEATH ACTION.
### THE PLAINTIFF VS. DEFENDANTS CORIZON HEALTH, CORIZON HEALTH INC., and THE PROGRAM FOR OFFENDERS, INC..

68. The foregoing paragraphs are incorporated by reference as though set forth fully.

69. The Plaintiff brings this action pursuant to the Pennsylvania Wrongful Death Act, **42 Pa. Cons. Stat. Ann § 8301 and Pa. R.C. P. No. § 2202(a).**

70. The decedent did not bring an action for personal injuries during his lifetime, and no other action for the death of the decedent has been commenced against the defendant.

71. These Defendants had a duty to Mr. Bonner, which duty they breached by engaging in the acts/omissions detailed earlier in this Complaint. All of these acts/omissions increased the risk of harm to Bonner as well.

72. As a direct and proximate result of the Defendants' negligence, these Defendants are liable and the Plaintiff seeks damages for:

    (a) the funeral expenses of Mr. Bonner;

    (b) the expenses of administration related to decedent's untimely death; and

    (c) any/all other damages as are permissible for the Plaintiff to recover in a Wrongful Death action.

**WHEREFORE,** the Plaintiff demands judgment against these Defendants, jointly, severally, and individually in an amount to be determined by a jury after a trial by jury, compensatory damages, interest, costs, attorney fees and any/all other relief as this Honorable Court may deem appropriate, whether legal or equitable.

Respectfully submitted,

/s/ Noah Geary_____
Noah Geary, Esquire
Attorney for the Plaintiff
Suite 225
Washington Trust Building
Washington, PA 15301
(724) 222-3788

October 31, 2015

**VERIFICATION TO COMPLAINT.**

I, Tiffany Barber, Administratrix of the Estate of Lamont Bonner, hereby verify that the facts and statements made within are true and correct to the best of my knowledge, information and belief. I understand that false statements herein made are subject to the penalties of 18 Pa.C.S.A. Section 4904, relating to unsworn falsification to authorities.

/s/ Tiffany Barber, Administratrix of the Estate of Lamont Bonner
Tiffany Barber, Administratrix of the Estate of Lamont Bonner

*Date: October 31, 2015*